ROEGGE, Respondent, vs. RAMLER, Appellant.*

*April 7—May 13, 1947.*

---

* Motion for rehearing denied, with $25 costs, on July 1, 1947.

*N. Paley Phillips,* attorney, and *H. S. Winnecour* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur Enright* of counsel, all of Milwaukee, and oral argument by *Mr. Enright.*

BARLOW, J. The leased premises were in the Milwaukee defense rental area, and appellant claims that under the price-control regulation of the United States Emergency Price Control Act of 1942 the rent has been paid in full with the exception of $30 which was tendered and refused.

April 13, 1942, appellant and respondent entered into a written lease for a term of one year from the 1st day of May, 1942, whereby respondent leased lake-residential property in the town of Delafield to appellant for the annual rental of $825, of which $100 was paid when the lease was executed, $200 was payable May 1, 1942, $300 August 1, 1942, $29 September 1, 1942, and $28 on the first day of each month after September 1, 1942, until the total sum of $825 had been paid. The first two payments were made and appellant entered into possession of the property May 1, 1942.

Pursuant to the Emergency Price Control Act the Office of Price Administration, which will hereinafter be referred to as "OPA," established a rent ceiling effective on and as of August 1, 1942, whereby the maximum rental that could lawfully be charged or paid was the rent actually charged for the premises as of March 1, 1942. The property being lake property, it commanded good rental during the summer months, but only a nominal rental during other seasons. It was rented at $30 per month as of March 1, 1942. The property was

registered and the ceiling price fixed by OPA at $30 per month. Appellant paid no rent during the ten months' period, $300 having already been paid, although payments were demanded in accordance with the terms of the lease. March 1, 1943, which was the commencement of the eleventh month of the tenancy, appellant paid $30 for the month of March, and subsequently paid $30 per month for the months of April, May, and June, 1943.

Respondent filed a petition for an adjustment of the rent in December, 1942, and on May 11, 1943, OPA revised the original order and provided seasonal maximum rents for these premises, authorizing the landlord to charge $40 per month for the months of October to May, inclusive, and $100 per month for the months of June to September, inclusive.

On July 1, 1943, the tenant forwarded $30 to the landlord to cover July rental, which was rejected and the money returned. July 27, 1943, appellant was evicted for alleged failure to pay rental at $100 per month for the months of June and July, 1943.

The trial court found that the $300 paid prior to August 1, 1942, was in payment of the three previous months and that there was due the plaintiff the sum of $30 per month from August 1, 1942, to May 31, 1943, a period of ten months, or $300, and $100 per month for June and July, 1943, or $200, making a total of $500, less payments amounting to $120 which had been made, granting judgment for the plaintiff for damages, interest, and costs in the sum of $464.27.

Appellant contends that the payment of $300 on or before May 1, 1942, constituted a prepayment of rent on an annual basis, which in this instance would entitle the lessee to a credit of $25 per month for the term of the lease against the maximum rental of $30 per month authorized by OPA for the one-year period. To sustain his position appellant relies on Interpretation M. R.—IX, of sec. 4 of Rent Regulations for

Housing issued by OPA. The interpretation relied upon is of no assistance in determining the rent required to be paid by the lessee for the period between May 1st, the effective date of the lease, and August 1st, when the rent ceiling was established. If this were an ordinary residence property in a city we could well divide the annual rental by twelve and fix the sum of $68.75 per month for the three-months' period in question. The property is referred to in the lease as a "lake residence" and the trial court found that the premises constituted a "resort or lake property" commanding varying rental for seasons of each year. The lease gave the appellant an option to purchase the premises at any time during the term of the lease, and it was agreed between the parties that in the event of a purchase the appellant be credited for rental for the unexpired portion of the term. In determining the amount of credit due appellant on the lease it was agreed rent was to be figured on the basis of $150 per month for May, June, July, and August, and $29 for the month of September, and $28 per month for the remaining period. Thus it is apparent both parties to the lease acknowledged there was a difference between the rental value of the premises during the summer months and the balance of the year. In May, 1943, OPA recognized there was a difference between the rental value of the premises during the summer months and the balance of the year, allowing a maximum of $100 per month for the four summer months and $40 per month for the remaining eight months.

With the lease in full force and effect during the three months in question, the trial court found the amount of the annual rental applicable to the three-months' period prior to August 1, 1942, to be the sum of $300, or $100 per month, and applied the $300 which had been paid prior to August 1st in payment thereof.

The purposes of the Emergency Price Control Act of 1942, as set forth in the title, are:

"To further the national defense and security by checking speculative and excessive price rises, price dislocations, and inflationary tendencies, and for other purposes." 56 U. S. Stats. at L. 23.

Congress directed the administrator to "ascertain and give due consideration to the rents prevailing for such accommodations, or comparable accommodations," to "make adjustments for such relevant factors as he may determine and deem to be of general applicability in respect of such accommodations," and from time to time to make and revise regulations or orders in the light of the letter and spirit of the act. Property owners and lessees as a rule accepted this emergency legislation, together with the orders and regulations of the administrator, with full confidence that the rights of all parties would be adjusted in accordance with the purposes of the act. If there is any interpretation of the administrator contrary to the conclusion reached by the trial court it can be applied only if consistent with the law properly applicable to the facts. *Bowles v. Simons* (7th Cir.), 145 Fed. (2d) 334; *Norwegian Nitrogen Products Co. v. United States*, 288 U. S. 294, 325, 53 Sup. Ct. 350, 77 L. Ed. 796; *Bowles v. Nu-Way Laundry Co.* (10th Cir.) 144 Fed. (2d) 741.

It is considered the facts sustain the trial court in finding that the amount of rent properly applicable to the three-months' period of May, June, and July, 1942, was the sum of $300.

Appellant further contends that the order of May 11, 1943, authorizing a higher ceiling than the one permitted by the order of August 1, 1942, did not automatically permit the collection of the additional rent without further action of the parties. At the expiration of the original term of the lease the respondent informed the tenant that she elected to regard him thereafter as a tenant from month to month. Thus beginning May 1, 1943, he occupied the premises as such tenant. Appellant relies on sec. 234.03, Stats., which requires the giving

of at least thirty days' notice in writing that he shall remove from the premises or pay additional rent. Continuing to occupy the premises after the expiration of the lease did not change the rent he was required to pay unless it was in excess of the ceiling fixed by OPA. The regulation promulgated by OPA provided:

"(c) *Effect of this regulation on leases and other rental agreements.* The provisions of any lease or other rental agreement shall remain in force pursuant to the terms thereof, except in so far as those provisions are inconsistent with this regulation."

Thus the rent was reduced and no notice was given under sec. 234.03, Stats. The order of May 11, 1943, found among other things that "the rent on the date determining the maximum rent for the above housing accommodations was substantially lower than at other times of the year by reason of seasonal demand or seasonal variations in the rent, and he deems it advisable to provide for different maximum rents for the different periods of the calendar year." Pursuant thereto he changed the rent ceiling for June and July, 1943, to $100 per month. The rental agreement between the parties was in full force and effect at that time, subject only to the rent ceiling as fixed by the administrator. With no notice necessary under sec. 234.03 for the reduction of rent in accordance with OPA regulations, it is logical that no notice should be required to collect additional rent under the rental agreement up to the amount of the ceiling so fixed from the beginning of the next rental month after it was changed, provided this was not in excess of the terms of the contract. Here the agreed rent for the summer months was at least the maximum allowed by OPA. This is wholly consistent with the purposes of the act, and sustains the finding of the trial court that respondent was entitled to collect $100 per month for the months of June and July, 1943.

*By the Court.*—Judgment affirmed.